IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

BRUCE T. WILLIAMS and )
LILLIAN F. WILLIAMS, )
 )
    Plaintiffs, )
 )
v. ) No. 3:05-cv-189
 )
BRIAN LEATHERWOOD and )
CITY OF KNOXVILLE, TENNESSEE, )
 )
    Defendants. )

## MEMORANDUM OPINION

    This civil action is before the court on the motion of defendant Brian Leatherwood for summary judgment [doc. 20]. The plaintiffs have responded [doc. 30], and the defendant has filed a reply brief [doc. 34]. The court finds that oral argument is not necessary, and the motion is ripe for the court's consideration. For the reasons discussed below, defendant Leatherwood's motion for summary judgment will be granted.

    In their complaint, the plaintiffs allege various violations of their federal and state rights arising from a fifteen-minute detention to investigate a possible aggravated assault. Specifically, the plaintiffs claim that defendant Leatherwood is liable for violations of their Fourth Amendment rights pursuant to

42 U.S.C. §§ 1983 and 1988; that the defendants are liable for violations of their Tennessee civil rights pursuant to 42 U.S.C. §§ 1983 and 1988(a); and that the defendants are liable to them for the state law claims of "deficient investigation," false arrest, and violations of their rights under the Tennessee Constitution.

## Factual Background

The facts of the incident resulting in the detention of the plaintiffs are undisputed, especially since the plaintiffs are evidently relying on the exhibits provided by defendant Leatherwood. On April 4, 2005, plaintiff Bruce Williams and his wife, plaintiff Lillian Williams, were traveling along Interstate 40 in Knox County, Tennessee, when they were caught in a traffic jam. In order to avoid the traffic problem, Mr. Williams drove his truck on the right shoulder towards the next exit. The driver of a semi-tractor trailer evidently took issue with Mr. Williams's maneuver, and pulled over forcing Mr. Williams's vehicle into the grass. The drivers exchanged obscene gestures, and Mr. Williams continued on the shoulder toward the exit until he encountered more traffic. By this time the tractor trailer was behind him. The driver of the tractor trailer exited the cab of the truck and came toward the Williamses' vehicle. The truck driver may have had some kind of weapon in his hand. Mr. Williams retrieved his .357 Magnum revolver from the console and laid the barrel on the edge of the open window. The truck driver eventually backed off and returned to his truck. Several drivers saw the incident and called 911, including at least one call about Mr. Williams displaying his gun.

2

The reports included the information and license number of the Williamses' vehicle, a white pick-up truck.[1]

About twenty-five minutes later, the Williamses' vehicle was seen in North Knoxville. Officer Leatherwood responded to the dispatch, and stopped the vehicle using his blue lights. By the time he stopped the Williamses' vehicle, he knew that the white pick-up truck was registered to Mr. Williams and that Mr. Williams had a license to carry a concealed weapon.

Officer Leatherwood approached the pick-up truck, asked Mr. Williams to step out of the truck, patted down Mr. Williams for weapons, and handcuffed him. Mr. Leatherwood was taken to the police cruiser and placed in the back seat until Officer Leatherwood could "sort it all out." Specifically, he wanted to find out if the victim was going to file charges for aggravated assault. Within fifteen minutes, Officer Leatherwood learned that the victim was not interested in filing charges. Mr. Williams was released, and his gun and ammunition were returned to him. Mr. Williams claims that the next day he began to suffer pain in his abdomen, and he eventually had two surgeries for a double hernia that he claims was caused by placing him in the cruiser with his hands cuffed behind his back.

---

[1] Throughout the record, the vehicle is called a "dually" or "dooly."

Another officer at the scene talked with Mrs. Williams. It is not clear that she ever left the pick-up truck, but she claims she was humiliated and embarrassed by the incident.

**Legal Discussion**

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment may be granted, "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Sixth Circuit has expressly adopted a trilogy of United States Supreme Court cases which clarified the standards for summary judgment under Rule 56. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (adopting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)). In summary, these cases hold that in order for a non-moving party to defeat a motion for summary judgment, the non-moving party must come forward with persuasive evidence to support his or her claim that there is a genuine factual dispute; that is, the non-moving party must produce evidence on which the jury could reasonably find for the non-moving party. "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

## A. Federal Civil Rights Claims – § 1983

In his motion for summary judgment, Officer Leatherwood argues that he had sufficient reasonable suspension to support an investigatory stop of the Williamses' vehicle, and that the detention of the Williams for fifteen minutes did not ripen into an arrest. The plaintiffs argue that there were no articulable facts to which Officer Leatherwood could point to justify an investigatory stop, and the detention was an arrest without probable cause.

In his memorandum supporting his motion for summary judgment, Officer Leatherwood relies on an earlier decision of the Sixth Circuit Court of Appeals, *Houston v. Clark County Sheriff Deputy John Does*, 174 F.3d 809 (6th Cir. 1999). This court finds that the *Houston* opinion resolves the issues in this case as demonstrated by the following summary. In *Houston*, there was an altercation in the parking lot of a bar involving several patrons of the bar, a security guard, and at least two sheriff's deputies. The deputies heard a loud popping noise and then a cry of someone having been shot. Deputy Hopper was afraid that his partner may have been shot when he could not find him in the melee. A security guard was found on the ground bleeding from his head. Deputy Schutte radioed Deputy Hopper that someone had been shot and a suspect was leaving the parking lot. Deputy Hopper got into his cruiser and following Deputy Shutte's directions proceeded to follow the suspect. Relying on information from Deputy Shutte about how many vehicles separated the

5

suspect's car and Deputy Hopper's cruiser, Deputy Hopper stopped Houston's car. Deputy Hopper, however, misunderstood the information and stopped the wrong vehicle. Deputy Hopper drew his weapon and ordered Houston and his passenger, Perkins, to get out of the vehicle and lie on the ground. Other officers arrived, and Houston and Perkins were handcuffed and placed in cruisers. Houston's car was searched, but no weapon was found. *Id.* at 811-812.

It was later determined that no shooting occurred in the parking lot; the sound that what was heard was the security guard being hit with a bottle. Nevertheless, Houston and Perkins were not allowed to go until the officers determined that they were not involved in the violence in the parking lot. Houston and Perkins believed they were detained about an hour, but the dispatch logs show the detention as lasting thirty-three minutes. *Id.* at 812.

Houston and Perkins argued, as the plaintiffs do in this case, that the officers did not have sufficient articulable facts to support the investigatory stop of their vehicle, and the use of weapons and handcuffs turned the stop into an arrest. The Sixth Circuit agreed with the district court that the officers had a reasonable suspicion to stop the Houston vehicle and the stop did not ripen into an arrest. *Id.* at 813-14.

First, on the issue of the investigatory stop, the Sixth Circuit stated that officers may briefly stop a vehicle for investigation if they have a reasonable suspicion that the individual has committed a crime. *Id.* at 813. If the officers are

6

able to identify specific and articulable facts which, together with rational inferences from those facts, reasonably demonstrate that a crime has been committed and the person stopped was involved, then an investigatory stop may be warranted. *Id.* The Sixth Circuit found that the officers who stopped Houston's vehicle reasonably believed that Houston and Perkins were involved in the incident in the bar parking lot. The officers believed that someone had been shot, and believed, although mistakenly, that the occupants of Houston's vehicle were the persons involved. The Sixth Circuit found that the mistake was not of constitutional dimension. *Id.* at 814.

  Second, on the issue of whether the stop ripened into an arrest, the Sixth Circuit held that as long as the "officer's inquiries and safety precautions were reasonably related to the initial basis for stopping the car," the stop did not become an arrest. *Id.* at 815. The Sixth Circuit held that the use of weapons and handcuffs was reasonable because the officers believed the suspects were armed and dangerous. *Id.* at 814-15. The court also pointed out that briefly detaining suspects in a police cruiser does not transform the investigatory stop into an arrest. *Id.* at 815. Finally, the court addressed the length of time that Houston and Perkins were held in the cruiser before being released and, given that there is no rigid time limit for investigatory stops, the time required to determine that they were not the suspects was reasonable. *Id.* The court held that under the facts of the case, "neither the force used against Houston and

7

Perkins nor the length of their detention exceeded the permissible scope of a *Terry* [investigatory] stop." *Id.*

In response to Officer Leatherwood's reliance on the *Houston* case, the Williams state: "*Houston* has not been relied on or cited by the Sixth Circuit since it was decided. *Houston* is restricted to the facts of the case." This is incorrect. A search in a legal research database (the court used Westlaw) shows that the *Houston* case has been cited 126 times in cases and secondary materials; seventy-two times in cases alone, including thirty-five citations in published and unpublished cases decided by the Sixth Circuit. The most interesting citation to *Houston* is found in *Weaver v. Shadoan*, 340 F.3d 398 (6th Cir. 2003), a case in which counsel for the plaintiff was Herbert S. Moncier, who happens to be the attorney for the plaintiffs in this case. In *Weaver*, the Sixth Circuit cited *Houston* with approval for the very same reasons this court is relying on it.

Instead, the plaintiffs rely on a recent dog-sniff case where the defendant, who was stopped for a traffic violation, was detained for two separate dog sniffs because the first dog did not alert to the presence of drugs. *United States v. Davis*, 430 F.3d 345 (6th Cir. 2005). The Sixth Circuit held that although the officers had a reasonable suspicion that Davis was involved in drug trafficking sufficient to support his detention until the first dog arrived, the police lacked reasonable suspicion to detain the defendants after the first dog sniff. *Id.*

8

at 351. The court finds that the facts of *Davis* are inapposite, and the court declines to apply its reasoning to the instant case.[2]

Investigatory Stop

In this case, Officer Leatherwood had the following information before he stopped the plaintiffs' pick-up truck:

– there was an incident of "road rage" on Interstate 40 which had occurred in the past half hour;

– several drivers called 911 to report the road rage incident, giving a description of the pick-up truck along with its license plate number;

– at least one of the callers told the dispatcher that the man in the pick-up truck displayed a gun;

– one of the callers was the "victim," the tractor trailer driver who also told the dispatcher about the gun;

– the owner of the white pick-up truck was named Williams; and

– Williams had a license to carry a concealed weapon.

The court finds that these specific and articulable facts justified Officer Leatherwood's stop of the plaintiff's pick-up truck. Officer Leatherwood had several reports of an aggravated assault occurring on the interstate, he knew it

---

[2] The plaintiffs also cited *Florida v. Royer*, 460 U.S. 491, 498 (1983) in support of their position that the officers did not have a sufficient reason to stop them to investigate the aggravated assault. The plaintiffs provide the following quote from *Royer*: "any restraint on the person amounting to a seizure for the purposes of the Fourth Amendment was invalid unless justified by probable cause." The plaintiffs, however, omitted the beginning of the sentence: "Prior to *Terry v. Ohio*, any restraint . . . ." The quote provided by the plaintiff is misleading at best.

9

was likely that the Williamses' vehicle was involved, and he knew that Williams carried a firearm.

Detention

Next, the Williamses' pick-up truck was detained for about fifteen minutes while Officer Leatherwood sorted out the details of the road rage incident and determined whether the tractor trailer driver was going to press charges. There is no question that Mr. Williams was cooperative with Officer Leatherwood, but it should be noted that Officer Leatherwood was by himself and he was investigating an incident where a gun had been displayed in a threatening manner. The court finds that Officer Leatherwood was justified in taking steps to protect himself by approaching the Williamses' truck with his gun drawn (but not pointed at the truck), by patting down Mr. Williams, and by securing him with handcuffs. Mr. Williams was placed in the police cruiser until Officer Leatherwood satisfied himself about the circumstances of the road rage incident, and then Mr. Williams was released and his firearm returned to him.

The court finds that the length of the stop and the safety precautions were reasonably related to the reason Officer Leatherwood stopped the Williamses' pick-up in the first place. *See Houston*, 174 F.3d at 814. The court finds, considering the facts in the light most favorable to the plaintiffs, that Officer Leatherwood is entitled to judgment as a matter of law because no violation of the plaintiffs' constitutional rights occurred. Further, in the absence of a constitutional

violation, the court need not reach the question of whether Officer Leatherwood is entitled to qualified immunity.  See *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (the threshold question in a qualified immunity analysis is whether there has been a constitutional violation).

## B. § 1988(a) Claims

In their complaint, the Williams bring a claim under 42 U.S.C. § 1988 contending that Tennessee provides more protection for arrested persons than federal Constitutional law.  Under § 1988(a), federal courts are authorized "where federal law is unsuited or insufficient 'to furnish suitable remedies' to look to principles of common law, as altered by state law, so long as such principles are not inconsistent with the Constitution and laws of the United States."  *Moor v. County of Alameda*, 411 U.S. 693, 702-03 (1973).  This does not mean, however, that there should be "wholesale importation" into federal law of state causes of action, "not even one purportedly designed for the protection of federal civil rights."  *Id.* at 703-04.  Section 1988(a) "was obviously intended to do nothing more than to explain the source of law to be applied in actions brought to enforce the substantive provisions of the [Civil Rights] Act."  *Id.* at 705.  Thus, § 1988(a) does not create a federal cause of action for alleged violations of civil rights.  *See also Hall v. Wooten*, 506 F.2d 564, 568 (6th Cir. 1974) (section 1988 does not create federal causes of action for violation of civil rights).

Therefore, the plaintiffs' claims under § 1988 must be dismissed.

11

### C. Violation of Rights Under the Tennessee Constitution

Under Tennessee law there is no private right of action for damages for an alleged violation of the Tennessee Constitution. *See Lee v. Ladd*, 834 S.W.2d 323, 325 (Tenn. Ct. App. 1992). Furthermore, a plaintiff may not use § 1983 to assert claims arising under state constitutions. *See Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989); *Alexander v. Beale Street Blues Co., Inc.*, 108 F. Supp. 2d 934, 945 (W.D. Tenn. 1999). Therefore, the plaintiffs' claims brought under the Tennessee Constitution must be dismissed.

### D. State Law Claims

The plaintiffs also raise state law claims for negligence ("deficient investigation") and false arrest. The plaintiffs contend that Officer Leatherwood did not conduct a reasonable, prudent investigation of the road rage incident before stopping the plaintiffs' vehicle, and he arrested them without probable cause. The court has found, however, that Officer Leatherwood had a reasonable suspicion sufficient to support the stop of the plaintiffs' vehicle, and he did not arrest the plaintiffs. Thus, based on the discussion set out above, the court finds that these two state law claims must also be dismissed.

**Conclusion**

For the reasons stated above, the court finds that there are no genuine issues of material fact and the motion for summary judgment filed by Officer Leatherwood, sued in both his individual and official capacities, should be granted. An order reflecting this opinion will be entered.

ENTER:

      *s/ Leon Jordan*
United States District Judge

13

Case 3:05-cv-00189   Document 38   Filed 06/26/06   Page 13 of 13   PageID #: 13