IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

BRUCE T. WILLIAMS and )
LILLIAN F. WILLIAMS, )
)
      Plaintiffs, )
)
v. ) No. 3:05-cv-189
)
BRIAN LEATHERWOOD and )
CITY OF KNOXVILLE, TENNESSEE, )
)
      Defendants. )

## MEMORANDUM OPINION

This civil action is before the court on the motion of defendant City of Knoxville for summary judgment [doc. 22]. The plaintiffs have responded [doc.45], and the defendant has filed a reply brief [doc. 49]. The court finds that oral argument on the motion is not necessary, and the motion is ripe for the court's consideration. For the reasons discussed below, the defendant's motion will be granted.

The plaintiffs bring their claims against the City of Knoxville pursuant to 42 U.S.C. §§ 1983 and 1988, and the Tennessee Governmental Tort Liability Act ("GTLA") (Tenn. Code Ann. § 29-20-101, *et seq.*). The plaintiffs allege: (1) that the City of Knoxville has a custom and practice of allowing officers to use

blue lights and a siren to stop citizens for investigation of criminal activity and a custom and practice allowing officers to "cuff and stuff" citizens while investigating criminal activity; (2) that the City of Knoxville failed to train its officers as to the requirements of investigative detentions; and (3) and that the City of Knoxville is liable under the GTLA for Officer Leatherwood's negligence. The plaintiffs seek damages, attorney's fees and costs.

## Factual Background

For purposes of this motion, the following facts are undisputed. On April 4, 2005, plaintiff Bruce Williams and his wife, plaintiff Lillian Williams, were traveling along Interstate 40 in Knox County, Tennessee, when they were caught in a traffic jam. In order to avoid the traffic problem, Mr. Williams drove his truck on the right shoulder towards the next exit. The driver of a semi-tractor trailer evidently took issue with Mr. Williams's maneuver and pulled over, forcing Mr. Williams's vehicle into the grass. The drivers exchanged obscene gestures, and Mr. Williams continued on the shoulder toward the exit until he encountered more traffic and had to stop. By this time the tractor trailer was behind him. The driver of the tractor trailer exited the cab of the truck and came toward the Williamses' vehicle. The truck driver may have had some kind of weapon in his hand. Mr. Williams retrieved his .357 Magnum revolver from the console and laid the barrel on the edge of the open window. The truck driver eventually backed off and returned to his truck. Several drivers saw the incident and called 911, including

2

at least one call about Mr. Williams displaying his gun. The reports included the information and license number of the Williamses' vehicle, a white pick-up truck.[1]

About twenty-five minutes later, the Williamses' vehicle was seen in North Knoxville. Officer Leatherwood responded to the dispatch, and stopped the vehicle using his blue lights. By the time he stopped the Williamses' vehicle, he knew that the white pick-up truck was registered to Mr. Williams and that Mr. Williams had a license to carry a concealed weapon.

Officer Leatherwood approached the pick-up truck, asked Mr. Williams to step out of the truck, patted down Mr. Williams for weapons, and handcuffed him. Mr. Leatherwood was taken to the police cruiser and placed in the back seat until Officer Leatherwood could "sort it all out." Specifically, he wanted to find out if the victim was going to file charges for aggravated assault. Within fifteen minutes, Officer Leatherwood learned that the victim was not interested in filing charges, Mr. Williams was released, and his gun and ammunition were returned to him. Mr. Williams claims that the next day he began to suffer pain in his abdomen, and he eventually had two surgeries for a double hernia that he claims was caused by placing him in the cruiser with his hands cuffed behind his back.

---

[1] Throughout the record, the vehicle is called a "dually" or "dooly."

Another officer at the scene talked with Mrs. Williams. It is not clear that she ever left the pick-up truck, but she claims she was humiliated and embarrassed by the incident.

## Legal Discussion

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment may be granted, "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Sixth Circuit has expressly adopted a trilogy of United States Supreme Court cases which clarified the standards for summary judgment under Rule 56. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989) (adopting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). In summary, these cases hold that in order for a non-moving party to defeat a motion for summary judgment, the non-moving party must come forward with persuasive evidence to support his or her claim that there is a genuine factual dispute; that is, the non-moving party must produce evidence on which the jury could reasonably find for the non-moving party. "The 'mere possibility' of a factual

dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

The plaintiffs' claims against the City of Knoxville brought under § 1983 for failure to train and for an unconstitutional policy or custom require little discussion in light of the court's previous ruling that Officer Leatherwood did not violate the plaintiffs' constitutional rights. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("neither *Monell* . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm."); *see also Voyticky v. Village of Timberlake,* 412 F.3d 669, 679 (6th Cir. 2005); *Henderson v. Reyda*, No. 05-6315 (6th Cir. Aug. 3, 2006). There are two points, however, that need to be addressed. First, the plaintiffs argue that Officer Leatherwood's actions were contrary to Tennessee law, so he was not <u>correctly</u> trained, in spite of evidence in the record that he had been trained above and beyond what was required for certification under the Tennessee standards. It appears that the plaintiffs are taking the position that Officer Leatherwood was not trained because an "investigative detention is not permitted under Tennessee's constitution and laws."[2]  This argument is based on some perceived difference between  the terms "investigatory stop" and

---

[2] The plaintiffs cite no authority for this remarkable position except a reference to footnote 2 in their memorandum. That footnote states in its entirety: "Significant Tennessee Supreme Court opinions had been made after he [Leatherwood] was trained in 1999 and prior to the Williams [sic] stop. *Id.* footnote 2."

5

"investigatory detention." The court has found that Officer Leatherwood's stop and short detention of the plaintiffs met the *Terry* requirements; the plaintiffs were lawfully stopped and detained so that Officer Leatherwood could investigate the circumstances of the road rage incident that had occurred.

The State of Tennessee has recognized and adopted *Terry v. Ohio*, 392 U.S. 1 (1968). *Hughes v. State*, 588 S.W.2d 296 (Tenn. 1979); *see also State v. Bridges*, 963 S.W.2d 487, 492 (Tenn. 1997) ("It is well established that a police officer may make an investigatory stop when the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed."). A stop necessarily includes a detention, even if only for a short time. Thus, there was no violation of the plaintiffs' constitutional rights under federal or Tennessee law.

Second, the plaintiffs argue that the City of Knoxville should be liable under 42 U.S.C. § 1988 because Tennessee's law of seizure, a "fundamental right," is more restrictive than their federal rights under the Fourth and Fourteenth Amendments. The Sixth Circuit, however, recently addressed this same claim and found that § 1988 "only speaks to damages brought under an already valid section 1983 claim." In the absence of a valid § 1983 claim against the City of Knoxville, § 1988 is irrelevant. *Henderson v. Reyda*, No. 05-6315 (6th Cir. Aug. 3, 2006).

Having found that the City of Knoxville is entitled to summary judgment on all the plaintiff's federal claims, the court declines to exercise its supplemental jurisdiction over the plaintiffs' two state law claims brought pursuant to the GTLA (negligent investigation and handcuffing). Therefore, these two claims will be remanded to Knox County Circuit Court. *See* 28 U.S.C. § 1367(c).

## **Conclusion**

For the reasons discussed above, the motion for summary judgment filed by the City of Knoxville will be granted, and these consolidated civil actions will be dismissed. An order reflecting this opinion will be entered.

ENTER:

*s/ Leon Jordan*
United States District Judge